ANNE L. FALOTICO ET AL., APPELLANTS, V. GRANT COUNTY
BOARD OF EQUALIZATION AND NEBRASKA TAX EQUALIZATION
AND REVIEW COMMISSION, APPELLEES.

631 N.W.2d 492

Filed July 27, 2001.    No. S-00-713.

Michael Creighton Falotico, and George G. Vinton, and John Falotico for appellants.

A. James Moravek, of Curtiss, Moravek, Curtiss & Margheim, for appellee Grant County Board of Equalization.

Don Stenberg, Attorney General, and L. Jay Bartel for amicus curiae State of Nebraska.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Anne L. Falotico, Lynch Circle Ranch, and the estate of Frank Lynch (collectively the taxpayers) brought property valuation protests to the Grant County Board of Equalization (the Board). The Board denied the protests, and the taxpayers appealed to the Tax Equalization and Review Commission (TERC). TERC affirmed the Board's determination. The taxpayers sought review in the Nebraska Court of Appeals, and we moved the case to our docket pursuant to our power to regulate the caseloads of this court and the Court of Appeals.

## BACKGROUND

The taxpayers own a cattle ranch consisting of several parcels of land in Grant County. The Grant County assessor assessed higher valuations for the subject properties for purposes of taxation as of January 1, 1999. The proposed valuations were based on a sample size of only five sales concerning four properties (one property was sold twice over a 3-year period). The taxpayers filed protests to the proposed valuations, claiming that the valuations (1) violated Neb. Rev. Stat. §§ 77-112 and 77-1371 (Cum. Supp. 1998), (2) were arbitrary and capricious and thus violated their rights under the Nebraska and U.S. Constitutions, and (3) violated their rights of equal protection in that other similarly situated taxpayers in other counties are not subject to arbitrary and capricious valuations. The taxpayers requested that the assessed values be returned to the 1998 assessed values.

The Board denied the taxpayers' protests, making its decision on July 23, 1999. The county clerk, though required under Neb.

Rev. Stat. § 77-1502 (Cum. Supp. 2000) to send the taxpayers notice of the Board's decision within 7 days of that decision, did not send the notices until August 19. The taxpayers received the notices on August 21, which fell on a Saturday. The deadline under Neb. Rev. Stat. § 77-1510 (Cum. Supp. 2000) for filing an appeal with TERC was Tuesday, August 24. Thus, the taxpayers had only 2 business days within which to prepare and file their appeals. Moreover, the forms TERC provided to the taxpayers stated that the deadline was August 25, 1 day later than the statutory deadline. The taxpayers mailed their appeal forms to TERC on August 25, and TERC received and filed them on August 26.

TERC held a hearing to determine whether it had jurisdiction to hear the cases and then issued an order declaring that it could properly do so. In its order, TERC found that while it only possesses the powers specifically conferred upon it by law and while the statutes require appeals to be filed on or before August 24, TERC nevertheless hears appeals in equity under Neb. Rev. Stat. § 77-1511 (Reissue 1996). It therefore concluded that it should not dismiss the taxpayers' appeals on jurisdictional grounds because to do so would "violate the princip[le] of equity, and would further deny [the taxpayers] due process of the law," namely the process required by §§ 77-1502 (notification within 7 days of Board's decision) and 77-1510 (30 days within which to appeal).

TERC later consolidated the appeals and held a hearing on the merits. At that hearing, the taxpayers called a professor of statistics, who testified that a sample size of four properties is too small to be statistically valid and that it is not possible to determine whether the values contained in the sample are representative of similar parcels in the county. She testified that making a valuation determination based on such a small sample is not statistically sound because of the risk that biases of various sorts may infect the data.

TERC granted the Board's motion to dismiss largely because the taxpayers had not produced any evidence regarding the actual values of the properties. Because they offered no such evidence, TERC found that the taxpayers had not shown that the Board's valuations were grossly excessive and had thus not rebutted the presumption favoring the Board's action. In addition, TERC found that it lacked jurisdiction to determine

whether the Board used professionally accepted mass appraisal methods because the taxpayers' argument amounted to a collateral attack. TERC also found that the Board was neither unreasonable nor arbitrary in relying on a small sample.

## ASSIGNMENTS OF ERROR

The taxpayers assign that TERC erred in (1) finding that it lacked jurisdiction to determine whether the Board used "professionally accepted mass appraisal methods" because the taxpayers' argument was a collateral attack, (2) holding that the Board was neither unreasonable nor arbitrary in relying on a sample of only five land sales relating to four parcels of land to reassess the values of the taxpayers' properties, (3) holding that the Board acted in conformity with § 77-112 because the Board did not use professionally accepted mass appraisal methods to derive the actual values of the taxpayers' real estate for property tax assessment purposes, (4) holding that the Board had jurisdiction to make reassessments when the Board had not conformed with the statute giving it such authority, and (5) relying on an unconstitutional statute as applied to the taxpayers.

## STANDARD OF REVIEW

Appellate review of a Tax Equalization and Review Commission decision shall be conducted for error on the record. *Creighton St. Joseph Hosp. v. Tax Eq. & Rev. Comm.*, 260 Neb. 905, 620 N.W.2d 90 (2000); *Mid City Bank v. Douglas Cty. Bd. of Equal.*, 260 Neb. 282, 616 N.W.2d 341 (2000). The meaning of a statute is a question of law, and a reviewing court is obligated to reach its conclusions independent of the determination made by the Tax Equalization and Review Commission. *Creighton St. Joseph Hosp. v. Tax Eq. & Rev. Comm., supra.* See *State v. Hernandez*, 259 Neb. 948, 613 N.W.2d 455 (2000).

## ANALYSIS

The threshold issue is whether TERC had subject matter jurisdiction over the case. Subject matter jurisdiction is the power of a tribunal to hear and determine a case of the general class or category to which the proceedings in question belong and to deal with the general subject matter involved. *Creighton St. Joseph Hosp. v. Tax Eq. & Rev. Comm., supra.* To acquire jurisdiction over the subject matter of the action, there must be

strict compliance with the time requirements of the statute granting the appeal. *Id.*

■ Section 77-1510 provides in part:

Appeals may be taken from any action of the county board of equalization to the Tax Equalization and Review Commission in accordance with the Tax Equalization and Review Commission Act. The appeal shall be filed within thirty days after adjournment of the board which, for actions taken pursuant to section 77-1502, shall be deemed to be July 25 of the year in which the action is taken.

Thirty days past July 25, 1999, is August 24. Here, the taxpayers postmarked their appeals on August 25, and they were actually received and filed by TERC on August 26. Thus, the taxpayers' appeals were filed after the expiration of the statutory 30-day period. The reasons for the delay were threefold. First, the county clerk, who is charged under § 77-1502 with the duty to notify the taxpayers within 7 days of the Board's decision, did not do so. In fact, the taxpayers effectively had only 2 business days within which to prepare and file their appeals. Second, the appeal forms provided to the taxpayers incorrectly stated that the filing deadline was August 25. Third, the taxpayers relied on TERC's "mailbox rule," which we have since declared invalid. See *Creighton St. Joseph Hosp. v. Tax Eq. & Rev. Comm., supra.*

As stated above, TERC, in its order following a jurisdictional hearing, recognized the mandatory and jurisdictional nature of statutory time periods, but nonetheless found that it would be inequitable and would violate the taxpayers' due process rights to dismiss their appeals on jurisdictional grounds, given that the tardiness of the appeals resulted not from the taxpayers' own inaction, but from the county clerk's violation of a statutory duty to notify the taxpayers and from the erroneous statement on a form provided to the taxpayers. TERC relied on its purported power to hear cases in equity and applied equitable principles in finding that it had jurisdiction to hear the case.

■ TERC's decision on this issue came before our decision in *Creighton St. Joseph Hosp. v. Tax Eq. & Rev. Comm.*, 260 Neb. 905, 620 N.W.2d 90 (2000). In *Creighton*, the taxpayers had similarly been given an appeal form containing an incorrect statement of the appeal deadline. Also, the taxpayers, relying on

TERC's mailbox rule, postmarked the appeal on the date stated on the form. We faced the questions of whether TERC has the authority to adopt a "mailbox rule" and to adopt the equitable "doctrine of unique circumstances," which would allow TERC to hear an appeal under certain circumstances even though the appeal was taken outside of the statutory time period, e.g., where TERC supplies a form stating an incorrect deadline. We stated the principle that TERC is an agency which has only the powers conferred upon it by the Legislature. *Id.* After examining the enabling statute, § 77-1510, we determined that TERC's jurisdiction is limited to those appeals filed within the statutory 30-day period and that TERC therefore does not have the authority to adopt the mailbox rule or the doctrine of unique circumstances because such rules and doctrines would expand its jurisdiction beyond what the Legislature provided in the statute. *Id.*

Our analysis in *Creighton* assumed, however, that the Douglas County board's decision was a valid, appealable decision, i.e., a decision from which the taxpayers *could* appeal. This case presents the question of whether the Board's decision was valid and appealable, given that the taxpayers were not given the statutory notice of the Board's decision.

Under the statutory scheme the Legislature has established, the county assessor is required to assess the value of real property in the county each year before March 20. See Neb. Rev. Stat. § 77-1301 (Cum. Supp. 1998). The assessor must then notify the record owner before June 1 regarding each item of real property which has been assessed at a value that is different from the value given in the previous year. See Neb. Rev. Stat. § 77-1315(2) (Cum. Supp. 1998). The taxpayer may file a protest before June 30 with the county board of equalization, which meets between June 1 and July 25, hearing taxpayer protests and rendering decisions regarding the merits of the protests. See § 77-1502. Under § 77-1502, after the board makes a decision regarding a particular protest, the county clerk must then give notice to the taxpayer within 7 days of the decision. See *id.* The taxpayer has until 30 days following the board's adjournment on July 25 within which to file an appeal with TERC. See § 77-1510.

The question in this case, which we have not previously addressed, is whether the notice required under § 77-1502 is

essential to the validity of the Board's decision. We have, however, considered whether the notice the county assessor is required to give under § 77-1315 at an earlier step in the assessment process is essential to the validity of the levy.

In *Rosenbery v. Douglas County*, 123 Neb. 803, 244 N.W. 398 (1932), we considered this question and, quoting *Clark & Wilson Lbr. Co. v. Weed*, 137 Or. 186, 2 P.2d 12 (1931), we stated that the procedure prescribed by the Legislature in respect to levying a tax must be strictly observed. We further stated that the statutory provision relating to a tax levy, the objects of which are the protection of taxpayers and to safeguard against excessive levies, is mandatory. *Id.* We concluded that the statute requiring notice by the county assessor to the taxpayer is mandatory and that the failure to give the required notice is fatal to the tax levied on the increase in valuation of the property. *Id.* The remedy in *Rosenbery* was that the amount of the increase in valuation was void. *Id.*

In *Gamboni v. County of Otoe*, 159 Neb. 417, 67 N.W.2d 489 (1954), *overruled in part on other grounds, Hansen v. County of Lincoln*, 188 Neb. 461, 197 N.W.2d 651 (1972), the county assessor had given notice to the taxpayer but had not included all the information required by the statute. We declared the tax void, stating: "We find the statute requires the notice must be given by the assessor and that it must specifically contain all the information the statute requires shall be set forth therein." *Id.* at 427, 67 N.W.2d at 497.

The notice requirements under § 77-1502 occur at a different point in time in the assessment process than the notice required by what is now § 77-1315. However, its object is largely the same, namely, notice. Given that appeals to TERC must be taken within 30 days after the adjournment of a board of equalization, § 77-1502 ensures that a taxpayer will be notified of the board's decision in order that the taxpayer may have time to prepare and file an appeal within the statutory 30-day period. Without this notice provision, the board could very well delay notification to the taxpayer, thereby preventing review of the board's decision. Likewise, if a violation of this provision were without consequence, the board could similarly engage in such delay and defeat the taxpayer's appeal, effectively denying the

taxpayer the process that is due under the statutes. We conclude that just as notice by the county assessor under § 77-1315 is essential to the validity of the levy, so too is notice by the county clerk under § 77-1502.

Because the county clerk violated the statutory duty under § 77-1502, the increase in the valuation is void. TERC thus lacked jurisdiction over the case. We therefore reverse the affirmance by TERC of the Board's decision which denied the protests filed by the taxpayers, vacate the decision of the Board denying the protests of the taxpayers, and declare that the action of the Grant County assessor increasing the valuations of the subject properties for the purposes of taxation as of January 1, 1999, is void.

REVERSED AND VACATED.