CITY OF ALLIANCE, NEBRASKA, A MUNICIPAL CORPORATION, APPELLANT, V. BOX BUTTE COUNTY BOARD OF EQUALIZATION, APPELLEE.

656 N.W.2d 439

Filed January 31, 2003.   No. S-02-495.

Leo Dobrovolny for appellant.

Karen A. Ditsch, Box Butte County Attorney, for appellee.

William G. Blake, of Pierson, Fitchett, Hunzeker, Blake & Katt, for amicus curiae League of Nebraska Municipalities.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

The Box Butte County Board of Equalization (Board) denied tax-exempt status for 67 properties owned by the City of Alliance, based upon the Board's determination that the subject properties were not being used for a public purpose. The Tax Equalization and Review Commission (TERC) affirmed the Board's decisions. The city appeals.

## FACTS

The pertinent facts are not disputed. Alliance is a city of the first class having those powers enumerated in Neb. Rev. Stat. § 16-101 et seq. (Reissue 1997 & Cum. Supp. 2002). Such powers include the creation by ordinance of improvement districts for the purpose of building and financing streets, sewers, and water mains within and adjoining the corporate limits of the city. §§ 16-617 and 16-667. Alliance created several improvement districts in connection with the anticipated development of five residential subdivisions within the city.

The city issued bonds to pay the cost of the improvements, as provided by §§ 16-623 and 16-670. As required by §§ 16-622 and 16-669, the city by ordinance levied special assessments against various residential lots which were specially benefited by the improvements, including the lots which are the subject of this action. When collected, special assessments constitute a sinking fund for payment of the bonds issued with respect to the improvements. §§ 16-623 and 16-670.

Because property owners did not pay the special assessments, the city made expenditures from its general fund to service the bonded indebtedness. As a result of the special assessment defaults, the city acquired title to various properties by foreclosure or conveyance in lieu of foreclosure. The city offered these properties for sale to the public at prices which did not exceed the amount of delinquent special assessments and interest for each property. The city has not leased or rented any of the properties and does not realize any revenue from them. When a property is sold, the proceeds are used to reimburse the

city's general fund for debt service expenditures pursuant to § 16-648. The city sold 14 of the properties in 1998, 1 in 1999, and 7 in 2000. The remaining 67 properties are the subject of this appeal.

On March 1, 2001, the Board determined that the subject properties were taxable because they were not being used for a public purpose or being developed for a public use. Thereafter, the city filed protests on each of the subject properties, which the Board denied. The city filed appeals with TERC. The city and the Board stipulated that the only issue before TERC was whether the properties were being utilized for a public purpose. On April 9, 2002, TERC entered an order in which it affirmed the Board's decisions. The city filed this timely appeal.

## ASSIGNMENT OF ERROR

The city assigns, restated and consolidated, that TERC erred in finding that the subject properties were not being used for a public purpose and were therefore subject to taxation.

## STANDARD OF REVIEW

■ Questions of law arising during appellate review of TERC decisions are reviewed de novo on the record. *Lyman-Richey Corp. v. Cass Cty. Bd. of Equal.*, 258 Neb. 1003, 607 N.W.2d 806 (2000).

## ANALYSIS

The sole issue before us is one of first impression in Nebraska: When real property is acquired by a city through enforcement of special assessment liens and is offered for sale to the public at a price which does not exceed the delinquent special assessments and accrued interest, is the real property being used "for a public purpose" and therefore exempt from real estate taxation?

■ Certain propositions of law govern our determination of the issue before us. The meaning of a statute is a question of law, and a reviewing court is obligated to reach its conclusions independent of the determination made by TERC. *Falotico v. Grant Cty. Bd. of Equal.*, 262 Neb. 292, 631 N.W.2d 492 (2001). In the absence of anything to the contrary, language contained in a rule or regulation is to be given its plain and ordinary meaning. *Vinci v. Nebraska Dept. of Corr. Servs.*, 253 Neb. 423, 571 N.W.2d 53

(1997). Since a statute conferring an exemption from taxation is strictly construed, one claiming an exemption from taxation of the claimant or the claimant's property must establish entitlement to that exemption. *First Data Corp. v. State*, 263 Neb. 344, 639 N.W.2d 898 (2002).

The Constitution of Nebraska provides that property of the state and its governmental subdivisions "shall be exempt from taxation to the extent such property is used by the state or governmental subdivision for public purposes authorized to the state or governmental subdivision by this Constitution or the Legislature." Neb. Const. art. VIII, § 2. The Legislature has further clarified the public purpose exemption in Neb. Rev. Stat. § 77-202(1)(a) (Cum. Supp. 2002), which states:

(1) The following property shall be exempt from property taxes:

(a) Property of the state and its governmental subdivisions to the extent used or being developed for use by the state or governmental subdivision for a public purpose. For purposes of this subdivision, public purpose means use of the property (i) *to provide public services* with or without cost to the recipient, including the general operation of government, public education, public safety, transportation, public works, civil and criminal justice, public health and welfare, developments by a public housing authority, parks, culture, recreation, community development, and cemetery purposes, or (ii) *to carry out the duties and responsibilities conferred by law* with or without consideration. Public purpose does not include leasing of property to a private party unless the lease of the property is at fair market value for a public purpose. Leases of property by a public housing authority to low-income individuals as a place of residence are for the authority's public purpose.

(Emphasis supplied.) The Department of Property Assessment and Taxation has also addressed the issue of exemptions and has adopted a regulation defining public purpose as

the use of property *to provide public services* with or without cost to the recipient, including the general operation of government, public education, public safety, transportation, public works, civil and criminal justice, public health and

welfare, developments by a public housing agency, parks, culture, recreation, community development, and cemetery purposes. Public purpose includes any use of the property *to carry out duties or responsibilities conferred by law.* Public purpose does not include the leasing of property to a private party for purposes other than a public purpose.

(Emphasis supplied.) 350 Neb. Admin. Code, ch. 15, § 002.01 (2002). Based on the preceding authorities, it is clear that in order to qualify for the public purpose exemption, the subject properties must either be used to carry out the city's "duties or responsibilities conferred by law," or to provide "public services."

As noted above, the city has statutory authority to establish improvement districts in order to build certain public improvements and a statutory obligation to levy special assessments on the properties benefited by such improvements as a means of creating a sinking fund for payment of bonds issued to finance the improvements. See §§ 16-617 to 16-619, 16-622, 16-623, 16-667, 16-669, and 16-670. When levied, the special assessments become a lien upon the properties assessed. See §§ 16-646 and 16-672.08. Such special assessment liens are inferior only to general taxes levied by the state and its political subdivisions. Neb. Rev. Stat. § 77-1917.01 (Reissue 1996). The Board contends that the city is not carrying out its "duties and responsibilities" when it forecloses on special assessment liens because no statute "require[s]" it to do so. Brief for appellee at 4.

If a landowner becomes delinquent on special assessments, a city has the power to foreclose. Neb. Rev. Stat. § 18-1216(1) (Reissue 1997) provides:

(1) Any city of the metropolitan, primary, first, or second class or any village shall have authority to collect the special assessments which it levies and to perform all other necessary functions related thereto including foreclosure. The governing body of any city or village collecting its own special assessments shall direct that notice that special assessments are due shall be mailed or otherwise delivered to the last-known address of the person against whom such special assessments are assessed or to the lending institution or other party responsible for paying such special assessments. Failure to receive such notice shall not relieve

the taxpayer from any liability to pay such special assessments and any interest or penalties accrued thereon.

Section § 77-1917.01 further clarifies the effect of delinquent special assessments and provides in relevant part:

All cities . . . in Nebraska *shall* have a lien upon real estate within their boundaries for all special assessments due thereon to the municipal corporation or district, which lien shall be inferior only to general taxes levied by the state and its political subdivisions. When such special assessments have become delinquent . . . the municipal corporation or district involved *may* itself as party plaintiff proceed in the district court of the county in which the real estate is situated to foreclose, in its own name, the lien for such delinquent special assessments in the same manner and with like effect as in the foreclosure of a real estate mortgage . . . .

(Emphasis supplied.) It is true that § 77-1917.01 does not mandate that a city use the authority it has been granted by § 18-1216 to foreclose on properties with delinquent special assessments. However, in the absence of voluntary payment, foreclosure and resale of the property is the sole means by which a city may protect its lien and ultimately recover some or all of the special assessments it is due.

The record reflects that the city has acquired and offers the subject properties for sale for the sole purpose of realizing the value of the city's special assessment liens so as to reimburse its general fund for payments on its bonded indebtedness. As such, the city is prudently exercising its legal authority to defray the cost of public improvements from a revenue source legally designated for that purpose. Based on the undisputed facts, we conclude that the city acquired and is holding the subject properties for resale in conjunction with its municipal duties and responsibilities. The plain language of § 77-202(1)(a)(ii) provides that property which is used "to carry out the duties and responsibilities conferred by law" is held for a public purpose and is not subject to taxation.

Our decision is based on undisputed facts presented by the record and the plain language of our constitution and statutes. Cases from other jurisdictions also lend support to our conclusion

that property acquired in the enforcement of tax liens and held solely for purposes of recovering those taxes is held for a public purpose. For example, in *Pulaski v. Carriage Creek Property*, 319 Ark. 12, 888 S.W.2d 652 (1994), a governmental improvement district acquired property as the result of foreclosure for failure to pay improvement assessments. The district requested that the county assessor remove the property from the tax rolls until it could be sold. The county assessor refused, claiming that the property was not being used exclusively for a public purpose as required for the exemption. The Arkansas Supreme Court, in deciding whether the property was held for a public purpose, relied on an early Arkansas case in which it had stated:

> "There is a material difference between the use of property exclusively for public purposes and renting it out and then applying the proceeds arising therefrom to the public use. The property under our Constitution must be actually occupied or made use of for a public purpose and our court has recognized the difference between the actual use of the property and the use of the income."

> . . . "The levee district only held the lands that it acquired at levee tax sale until it was practical to dispose of them again. They were not held for any purpose of gain or as income producing property. When sold, the proceeds took the place of the levee taxes, for the enforcement of which and the expenses incident thereto, they were sold, and in this way we think the lands were directly and immediately used exclusively for public purposes within the meaning of the Constitution, and were not subject to taxation."

*Id.* at 15, 888 S.W.2d at 654, quoting *Robinson v. Indiana & Ark. Lbr. & Mfg. Co.*, 128 Ark. 550, 194 S.W. 870 (1917). In finding the property exempt from taxation, the court reasoned that the district in *Pulaski*, like the levee district in *Robinson*, was simply holding the property " 'in its governmental capacity pending sale of the [property] to recover delinquent taxes and penalties.' " *Pulaski*, 319 Ark. at 15, 888 S.W.2d at 654.

Other courts have reached similar conclusions under analogous factual circumstances. See, e.g., *State of Texas v. City of San Antonio*, 147 Tex. 1, 209 S.W.2d 756 (1948) (where city owns and holds property solely for purpose of collecting taxes

thereon until it can be resold, city owns and holds property for public purpose); *City of Austin v. Sheppard, Comptroller*, 144 Tex. 291, 190 S.W.2d 486 (1945) (property acquired by city under tax foreclosure proceedings is used solely for public purpose when it is not rented and city's sole intention is to sell property and obtain tax money). See, also, 71 Am. Jur. 2d *State and Local Taxation* § 277 (2001). As in these cases, the City of Alliance holds the subject property in a governmental capacity for the sole purpose of realizing the revenue attributable to its special assessment liens.

In support of its position that the properties are not exempt, the Board relies upon *Sun 'N Lake of Sebring Dist. v. McIntyre*, 800 So. 2d 715 (Fla. App. 2001). We find that case to be distinguishable in that the taxing entity entered into an agreement with private entities, including developers and bondholders, to jointly market property which was subject to delinquent assessments in a manner which would confer benefits upon the private enterprises. Here, the City of Alliance has acted independently in its governmental capacity to acquire and resell the property for the sole purpose of protecting its liens and realizing the proceeds of lawful assessments.

## CONCLUSION

Based on the foregoing analysis, we conclude that the subject properties are used by the city exclusively for a public purpose and are therefore exempt from taxation pursuant to § 77-202(1)(a). We therefore reverse the TERC order and remand the cause to TERC with directions to instruct the Board to grant the requested exemptions on each of the subject properties.

REVERSED AND REMANDED WITH DIRECTIONS.