CITY OF YORK, APPELLANT, V. YORK COUNTY
BOARD OF EQUALIZATION, APPELLEE.

664 N.W.2d 445

Filed July 11, 2003.   No. S-02-498.

Charles W. Campbell, of Angle, Murphy, Valentino & Campbell, P.C., for appellant.

Randy R. Stoll, York County Attorney, for appellee.

William G. Blake and Shanna L. Cole, of Pierson, Fitchett, Hunzeker, Blake & Katt, for amicus curiae League of Nebraska Municipalities.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD; STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

Wright, J.

## NATURE OF CASE

The City of York (City) owns certain land adjacent to the York Municipal Airport, which land was leased to a private party for agricultural use. The York County Board of Equalization (Board) ruled that the leased property was not exempt from taxation. The Tax Equalization and Review Commission (TERC) affirmed the decision of the Board, and the City appealed.

## . SCOPE OF REVIEW

■ Decisions rendered by TERC shall be reviewed by the court for errors appearing on the record of the commission. Neb. Rev. Stat. § 77-5019(5) (Cum. Supp. 2000); *Marshall v. Dawes Cty. Bd. of Equal.*, 265 Neb. 33, 654 N.W.2d 184 (2002).

■ When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

■ Questions of law arising during appellate review of TERC decisions are reviewed de novo on the record. *City of Alliance v. Box Butte Cty. Bd. of Equal.*, 265 Neb. 262, 656 N.W.2d 439 (2003).

## FACTS

The City is the owner of property located in York County, Nebraska, that is adjacent to the York Municipal Airport. The property consists of four tracts which are described as (1) the northeast quarter of Section 26, Township 11, Range 3; (2) the northwest quarter of Section 26, Township 11, Range 3; (3) the southeast quarter of Section 26, Township 11, Range 3; and (4) part of the southeast quarter of Section 23, Township 11, Range 3. The tracts comprise approximately 423.2 acres.

Approval for the airport was obtained from the Federal Aviation Administration (FAA) and the Nebraska Department of Aeronautics. According to the City's director of public works, 90 percent of the cost to acquire the airport property was funded by a federal grant. The City issued bonds to pay for its portion of the cost. At the time of the hearing before TERC, the bonded indebtedness had been satisfied and no bonds were outstanding. Under the federal grant-in-aid program, the City is required to

comply with provisions of federal law and advisory circulars of the U.S. Department of Transportation and the FAA.

The airport property is improved with a paved runway, as well as a number of hangars and other buildings, taxiways, and roads. These improvements are surrounded by the unimproved tracts at issue in this case. Pursuant to FAA regulations regarding erosion control, the City has two options concerning these unimproved tracts: It can seed and otherwise maintain the unimproved land at its own expense, or it can lease the property for restricted agricultural use. The City has elected to lease approximately 245 acres to a private party for agricultural use. Only these 245 acres were determined to be taxable by the Board, and only that property is at issue in this appeal.

Pursuant to Neb. Rev. Stat. § 77-202.12(1) (Cum. Supp. 2002), the York County assessor notified the City of her determination that the leased property was not being used or developed for a public purpose. The county assessor testified that she reviewed the lease and then sent a notice to the City stating that the property was income producing and therefore taxable because it was not being used for a public purpose. However, she testified that she was not aware of the FAA restrictions on buffer zones at the time she made her decision. After the county assessor made her determination, she received a directive from the state Property Tax Administrator indicating that the areas within the buffer zone would not be subject to taxation.

After the county assessor notified the City that the land at issue was taxable, the City filed a protest to the Board. The Board denied the protest, and the City appealed the denial to TERC.

The City argued before TERC that the primary purpose of the lease of the land surrounding the airport was to control erosion and wildlife, as recommended by the FAA. The City asserted that the agricultural use was incidental.

The City's public works director testified that it was required to maintain a buffer zone or hazard transition zone to clear the approach and takeoff of aircraft. FAA assurances that were part of the grant used to purchase the land required protecting the airport from hazards, and development was restricted within the area that was being farmed. FAA assurances also required that all revenues generated from the land be used for aviation purposes,

and all revenues generated from the lease of the land were placed in the airport budget.

The public works director stated that the lease of the property was awarded after the City completed a formal bidding process. The terms of the lease placed restrictions on the crops in accordance with the airport plan and prohibited livestock on the premises. The lease was subject to approval by the FAA and to the terms of the FAA-approved layout plan. The terms of the lease were from March 1, 2000, to February 2003, and the rent was $111.84 per acre, for a total of $27,400 per year. The public works director testified that the lease represented the fair market value for the land because it was based on a sealed bid process. He stated that if the land were not leased, the City would be required to use its own labor to maintain the land and control the weeds.

TERC found that the land at issue was leased to a private party for agricultural use and was in direct competition with all other land available for lease for agricultural use. TERC stated that the City had failed to demonstrate that the agricultural use of the property by a private party was a qualifying "public purpose" under Neb. Rev. Stat. § 77-202(1)(a) (Cum. Supp. 2000). TERC therefore affirmed the decision of the Board denying the City's protest.

### ASSIGNMENTS OF ERROR

The City of York assigns as error: (1) TERC erred in finding that the use of the property did not qualify as a public purpose under § 77-202(1)(a); (2) TERC erred in finding that the primary use of the property was agricultural; (3) TERC erred in finding that the lease of the land to a private party for agricultural use is in direct competition with all other land available for lease for agricultural use; (4) TERC's findings and orders are contrary to Neb. Rev. Stat. §§ 3-206, 3-209, and 3-215 (Reissue 1997); (5) TERC's findings and orders conflict with the grant agreement, the FAA-approved airport layout plan, assurances from the FAA, and applicable federal statutes and regulations; and (6) TERC's findings and orders violate article VIII, § 1, of the Nebraska Constitution, which requires that real estate be taxed uniformly and proportionately.

## ANALYSIS

Decisions rendered by TERC shall be reviewed by the court for errors appearing on the record of the commission. § 77-5019(5); *Marshall v. Dawes Cty. Bd. of Equal.*, 265 Neb. 33, 654 N.W.2d 184 (2002). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* Questions of law arising during appellate review of TERC decisions are reviewed de novo on the record. *City of Alliance v. Box Butte Cty. Bd. of Equal.*, 265 Neb. 262, 656 N.W.2d 439 (2003).

The statutes governing TERC create a presumption that the Board has faithfully performed its official duties and has acted upon sufficient competent evidence to justify its actions. See *Pittman v. Sarpy Cty. Bd. of Equal.*, 258 Neb. 390, 603 N.W.2d 447 (1999) (construing Neb. Rev. Stat. § 77-1511 (Reissue 1996), currently at Neb. Rev. Stat. § 77-5016(7) (Cum. Supp. 2002)). This presumption remains until there is competent evidence to the contrary presented. See, *Firethorn Invest. v. Lancaster Cty. Bd. of Equal.*, 261 Neb. 231, 622 N.W.2d 605 (2001); *US Ecology v. Boyd Cty. Bd. of Equal.*, 256 Neb. 7, 588 N.W.2d 575 (1999). Once the presumption has been rebutted, the burden shifts to the party requesting the exemption to prove its entitlement thereto. See *Pittman v. Sarpy Cty. Bd. of Equal., supra.* In this case, the City had the burden to prove that the predominant use of the property was for a public purpose.

TERC found that the assessor was unfamiliar with the rules and regulations of the U.S. Department of Transportation and the FAA, which restrict land use on and adjacent to airports. It also found that the assessor was unfamiliar with the restrictions imposed on the City as a recipient of federal grants. Based upon these findings, TERC concluded that the City had rebutted the presumption in favor of the Board. However, TERC concluded that the City failed to establish that the property qualified for an exemption under § 77-202(1)(a).

We are presented with the legal question of whether the above-described lease serves a public purpose. Questions of law arising during appellate review of TERC decisions are reviewed

de novo on the record. *City of Alliance v. Box Butte Cty. Bd. of Equal., supra.*

In 1998, Neb. Const. art. VIII, § 2, was amended to provide in part:

> (1) The property of the state and its governmental subdivisions shall constitute a separate class of property and shall be exempt from taxation to the extent such property is used by the state or governmental subdivision for public purposes authorized to the state or governmental subdivision by this Constitution or the Legislature. To the extent such property is not used for the authorized public purposes, the Legislature may classify such property, exempt such classes, and impose or authorize some or all of such property to be subject to property taxes or payments in lieu of property taxes except as provided by law . . . .

This constitutional amendment was codified in § 77-202(1)(a), which provides:

> (1) The following property shall be exempt from property taxes:
>
> (a) Property of the state and its governmental subdivisions to the extent used or being developed for use by the state or governmental subdivision for a public purpose. For purposes of this subdivision, public purpose means use of the property (i) to provide public services with or without cost to the recipient, including the general operation of government, public education, public safety, transportation, public works, civil and criminal justice, public health and welfare . . . . Public purpose does not include leasing of property to a private party unless the lease of the property is at fair market value for a public purpose.

■ Nebraska's Constitution "is not a grant, but, rather, is a restriction on legislative power, and the Legislature is free to act on any subject not inhibited by the constitution." *State ex rel. Stenberg v. Omaha Expo. & Racing*, 263 Neb. 991, 999, 644 N.W.2d 563, 570 (2002). This court has previously held:

> "It is the fundamental law of this state that the Legislature is vested with the taxing power without limit, subject only to restrictions contained in the Constitution. It is axiomatic therefore that the provisions of the Constitution in relation

to taxation are not grants of power but are limitations on the taxing power of the state lodged in the Legislature. . . ." *Sandberg v. State*, 188 Neb. 335, 340, 196 N.W.2d 501, 505 (1972), quoting *State ex rel. School Dist. of Scottsbluff v. Ellis*, 168 Neb. 166, 95 N.W.2d 538 (1959).

Prior to the 1998 amendment to the Nebraska Constitution, which removed some of the restrictions on taxing government property, the Legislature could not impose taxes on any government property. Pursuant to the amendment, to the extent the property is not used for a public purpose, the Legislature may classify it, exempt certain classes from taxation, and authorize some or all of the property to be subject to property taxes. The term "public purpose" means "use of the property (i) to provide public services . . . including . . . transportation." § 77-202(1)(a).

In 1945, the Legislature specifically declared that acquisition of land for the establishment and maintenance of municipal airports was a public function "exercised for a public purpose" and a matter of "public necessity." See § 3-206. Thus, the land acquired for the municipal airport has previously been declared to be exempt from taxation "to the same extent as other property used for public purposes." See § 3-209. All income received for operation of a municipal airport is also exempt. See *id.*

Section 3-206 provided:

> (1) The acquisition of any lands for the purpose of establishing airports or other air navigation facilities . . . (3) the . . . maintenance . . . and operation of airports and other air navigation facilities and (4) the exercise of any other powers herein granted to municipalities are hereby declared to be public, governmental and municipal functions, exercised for a public purpose, and matters of public necessity. Such lands and other property . . . used by such municipalities in the manner and for the purposes enumerated in sections 3-201 to 3-238 . . . are hereby declared to be acquired and used for public, governmental and municipal purposes and as a matter of public necessity.

The statutes governing airports were not expressly or impliedly repealed by the passage of the 1998 constitutional amendment or § 77-202(1)(a). It is therefore clear that airports owned and operated by municipalities are exempt from taxation.

As noted above, the question is whether the lease of the land surrounding the airport served a public purpose. The leasing of property by a municipality to a private party is not exempt unless the lease is at fair market value for a public purpose. See § 77-202(1)(a). "The primary or dominant use, and not an incidental use, is controlling in determining whether property is exempt from taxation." *Doane College v. County of Saline,* 173 Neb. 8, 11, 112 N.W.2d 248, 250 (1961). Incidental use is defined as a use other than the primary use and is so minor or secondary in nature as not to distract from the primary use. See 350 Neb. Admin. Code, ch. 15, § 002.21 (2001).

It was not disputed before TERC that the lease was for fair market value. The property is leased for the purpose of maintaining the area surrounding the runways as a buffer zone as required by the FAA assurances, federal legislation, and state law. The lease ensures that the grounds will be properly maintained and that weeds will be controlled without the use of city labor or at the City's expense. The revenue generated from the rent is used to support the airport's operating expenses as required by the FAA and as provided by federal legislation. We conclude that the primary use of the land is as an airport buffer zone and that the agricultural use is incidental.

A similar situation was considered in *City of Winfield v. Board of County Commissioners,* 205 Kan. 333, 469 P.2d 424 (1970). In that case, the cities of Arkansas City and Winfield, Kansas, brought an action for recovery of taxes paid under protest on a part of the municipal airport consisting of irregular tracts planted to wheat under an oral lease. In 1967, the assessor placed the portion of the airport which the cities had orally leased on the tax rolls, contending that farming operations removed the land from the exemption provisions of Kansas law. The portion of the airport placed upon the tax rolls consisted of approximately 634 acres.

The board denied the cities' appeal, finding that the property was not being used exclusively for municipal purposes so as to bring it within the exemption provisions of the Kansas Constitution and Kansas law. The trial court reversed, concluding that the partial use made of the municipal airport premises for wheat farming was only incidental to its exclusive use as the public municipal airport.

The Kansas Supreme Court agreed. It concluded that since the ground was being operated as an airport facility pursuant to federal regulations, the cities' decision to permit the growing of wheat in the areas in question was not only a sound practice but was economically wise. The court concluded that it was merely incidental to the exclusive operation of the airport facility as a municipal airport and did not alter the primary use.

In this case, the land is being leased for agricultural use, which is incidental to its purpose as a buffer zone for the airport. We conclude as a matter of law that the leased property is being used for a public purpose and is exempt from taxation.

In addition to the exemption issue, the City argues that TERC's findings and orders violate article VIII, § 1, of the Nebraska Constitution, which requires that real estate be taxed uniformly and proportionately. Because of our decision that the land is exempt from taxation, it is not necessary for us to reach that issue, and we decline to do so.

## CONCLUSION

An appellate court's review of a decision by TERC is for errors appearing on the record. § 77-5019(5); *Marshall v. Dawes Cty. Bd. of Equal.*, 265 Neb. 33, 654 N.W.2d 184 (2002). We conclude that TERC's decision does not conform to the law, and therefore, we reverse the decision and remand the cause with directions that TERC reverse the decision of the Board finding the property to be taxable.

REVERSED AND REMANDED WITH DIRECTIONS.