CITY OF YORK, APPELLANT, V. YORK COUNTY
BOARD OF EQUALIZATION, APPELLEE.

664 N.W.2d 452

Filed July 11, 2003.   No. S-02-499.

Charles W. Campbell, of Angle, Murphy, Valentino & Campbell, P.C., for appellant.

Randy R. Stoll, York County Attorney, for appellee.

William G. Blake and Shanna L. Cole, of Pierson, Fitchett, Hunzeker, Blake & Katt, for amicus curiae League of Nebraska Municipalities.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

The City of York (City) owns certain land adjacent to the York Municipal Airport. A portion of this land has been developed into an industrial park, and the City has leased the remainder of the land to a private party for agricultural use. The York County Board of Equalization (Board) ruled that the leased property was not exempt from taxation. The Tax Equalization and Review Commission (TERC) affirmed the decision of the Board, and the City appealed.

## SCOPE OF REVIEW

■ Decisions rendered by TERC shall be reviewed by the court for errors appearing on the record of the commission. Neb. Rev. Stat. § 77-5019(5) (Cum. Supp. 2000); *Marshall v. Dawes Cty. Bd. of Equal.*, 265 Neb. 33, 654 N.W.2d 184 (2002).

■ When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

■ Questions of law arising during appellate review of TERC decisions are reviewed de novo on the record. *City of Alliance v.*

*Box Butte Cty. Bd. of Equal.*, 265 Neb. 262, 656 N.W.2d 439 (2003).

## FACTS

The property at issue is legally described as Lots 1, 3, and 8 through 12 in Block 1; Lots 1, 2, 3, 8, and 9 in Block 2; and Lots 1 through 4 in Block 3, in the York Industrial Park, as well as Lots 2 and 3 in Block 2, in the York Industrial Park "2nd Platting," York County, Nebraska. The property, which we will refer to as "the industrial park," includes approximately 85.04 acres, of which 83.5 acres has been leased to a private party for agricultural use. The 83.5 acres which have been leased were determined to be taxable and are the subject of this appeal.

The industrial park has been developed by the City as part of its economic development plan. The primary purpose of creating the industrial park was to allow the City to offer improved industrial land for sale, which would attract industry to the community. The City has installed a street system and water and sewer mains. The City holds the lots in the industrial park for sale to private individuals and entities. The lots have been advertised for sale for $18,500 per acre, which includes $5,000 per acre for deposit into an airport fund. The remaining amount is used by the City for improvements. The former airport runway has been modified to serve as a street for the industrial park.

The property at issue is leased for $100 per acre, which the city administrator stated represented the fair market value. The lease is subject to the sale of the property for industrial use.

The York County assessor reviewed the lease and determined that because the property was income producing and not used for a public purpose, it was not exempt from taxation. She notified the City, which filed a protest with the Board. The Board denied the exemption, and the City appealed to TERC.

The City argued before TERC that the agricultural use of the industrial park land was an incidental use and that the primary use was for community development. TERC found that the primary or predominant use of the industrial park land was for agricultural purposes and that the property was not being used or developed for use as a development project. It concluded that the City had failed to establish that leasing of the industrial park

land was a qualifying use under the community development definition found in state regulations. TERC also found that the City had failed to establish the imminent sale of any of the lots or to demonstrate that the use of the leased land qualified as a public purpose. For these reasons, TERC affirmed the decision of the Board denying the exemption.

## ASSIGNMENTS OF ERROR

The City of York assigns as error: (1) TERC erred in finding that the use of the property did not qualify as a public purpose under Neb. Rev. Stat. § 77-202(1)(a) (Cum. Supp. 2000); (2) TERC erred in finding that the primary use of the property was agricultural; (3) TERC erred in finding that the lease of the land to a private party for agricultural use is in direct competition with all other land available for lease for agricultural use; (4) TERC erred in finding no evidence to establish that sale of the lots is imminent; (5) TERC erred in failing to determine that the property is exempt under Neb. Rev. Stat. § 18-2137 (Reissue 1997); and (6) TERC's findings and orders violate article VIII, § 1, of the Nebraska Constitution, which requires that real estate be taxed uniformly and proportionately.

## ANALYSIS

The question presented is whether the 83.5 acres of leased property in the City's industrial park is being used for a public purpose. Decisions rendered by TERC shall be reviewed by the court for errors appearing on the record of the commission. § 77-5019(5); *Marshall v. Dawes Cty. Bd. of Equal.*, 265 Neb. 33, 654 N.W.2d 184 (2002). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* Questions of law arising during appellate review of TERC decisions are reviewed de novo on the record. *City of Alliance v. Box Butte Cty. Bd. of Equal.*, 265 Neb. 262, 656 N.W.2d 439 (2003).

Pursuant to Neb. Const. art. VIII, § 2, the property of the State and its governmental subdivisions is exempt from taxation to the extent the property is used for public purposes. The amendment to article VIII, § 2, has been codified in § 77-202(1)(a).

A public purpose is defined as

> use of the property (i) to provide public services with or without cost to the recipient, including the general operation of government, public education, public safety, transportation, public works, civil and criminal justice, public health and welfare, developments by a public housing authority, parks, culture, recreation, community development, and cemetery purposes, or (ii) to carry out the duties and responsibilities conferred by law with or without consideration.

§ 77-202(1)(a). The statute provides that the definition of a public purpose does not include "leasing of property to a private party unless the lease of the property is at fair market value for a public purpose." *Id.*

State regulations further provide that the phrase "[b]eing developed for use for a public purpose" means that the governmental subdivision has publicly stated the intended use of the property in the future, and the intended use must clearly qualify as a public purpose. See 350 Neb. Admin. Code, ch. 15, §§ 002.20 and 002.20A (2001). In addition, the property must be actively prepared for the specified use, and reasonable progress must be made toward completion of the project. §§ 002.20B and 002.20C.

The City asserts that TERC erred in finding that the use of the property did not qualify as a public purpose under § 77-202(1)(a). We agree. One of the uses which qualifies as a public purpose under § 77-202(1)(a) is "community development." The term is defined in state regulations as "public property for use in a development project." See 350 Neb. Admin. Code, ch. 15, § 002.13 (2001).

The land at issue was authorized for development as an industrial park when the city council adopted a comprehensive plan in 1996. Six lots were sold between 1994 and 2001. Prior to the hearing before TERC, the City had transferred ownership of an additional four lots. The zoning of some of the lots had been changed to commercial. Contrary to the findings of TERC, a number of the lots in the industrial park have been sold.

The industrial park was created by the city council acting as a community redevelopment authority for the purpose of community development. The industrial park land includes streets, water and sewer lines, and street lights. The property has been

subdivided and is zoned for industrial or commercial use. The City has spent approximately $13,500 per acre to develop the area. The York County Development Corporation erected a building on speculation to facilitate development. The property was offered for sale at $18,500 per acre, with $13,500 to be placed in an unspecified fund and $5,000 to be placed in an airport fund.

■ "The primary or dominant use, and not an incidental use, is controlling in determining whether property is exempt from taxation." *Doane College v. County of Saline*, 173 Neb. 8, 11, 112 N.W.2d 248, 250 (1961). We conclude that the primary use the industrial park land serves is for a public purpose and that the agricultural use is incidental. The leased property is exempt as a community development project under § 77-202(1)(a). The unsold lots have been leased for a 3-year term for agricultural use. This use of the property is incidental to the primary purpose of being an industrial park for community development. The primary use of the property is for a public purpose. Renting the property for $100 per acre cannot be considered anything but an incidental use when one compares the rental income to the $13,500 per acre spent by the City to develop the area.

The City also argues that TERC's findings and orders violate article VIII, § 1, of the Nebraska Constitution, which requires that real estate be taxed uniformly and proportionately. Because of our decision that the land is tax exempt, it is not necessary for us to reach that issue, and we decline to do so.

## CONCLUSION

This court's review of a decision by TERC is conducted for errors appearing on the record of the commission. § 77-5019(5); *Marshall v. Dawes Cty. Bd. of Equal.*, 265 Neb. 33, 654 N.W.2d 184 (2002). We find that TERC's decision does not conform to the law. Thus, the decision is reversed, and the cause is remanded with directions that TERC reverse the decision of the Board finding the property to be taxable.

REVERSED AND REMANDED WITH DIRECTIONS.