BANKERS LIFE INSURANCE COMPANY, APPELLEE, V. COUNTY BOARD OF EQUALIZATION OF LANCASTER COUNTY ET AL., APPELLANTS.

FILED JUNE 13, 1911.   No. 16,688.

1. Taxation: ASSESSMENT: CORRECTION OF RETURN: NOTICE. Sections 11012, 11031, Ann. St. 1909, relating to the public revenue, authorizes a county assessor to change the schedule of a taxpayer by adding thereto any taxable property which he finds to have been omitted therefrom, upon due notice of his intention to make such change.

2. ———: ———: ———: DUE PROCESS OF LAW. The taxpayer has a right to rely upon his sworn return made to the assessor, unless notice is given him of an intention to increase the amount thereof. A change of schedule without notice should be treated as a complaint made by the assessor to the board of equalization, and notice should be given of such complaint and an opportunity for a hearing should be afforded. Any substantial increase of the schedule without notice and an opportunity for a hearing amounts to the taking of the property of a citizen without due process of law, and is void.

3. ———: ———: ESTOPPEL. In case the taxpayer files a complaint before the board of equalization objecting to the change in his schedule, and is granted a hearing thereon, he cannot thereafter challenge the jurisdiction of the board over the subject matter of his complaint.

4. ———: ———: DOMESTIC INSURANCE COMPANIES. It is probable that under the general provisions of the revenue law of 1903 (laws 1903, ch. 73) domestic insurance companies may be required to list their capital stock for taxation; but, if the capital

stock is taxed, its value must be ascertained in the manner provided by section 10955, Ann. St. 1909, and when such value is ascertained there must be deducted therefrom the value of the real estate and other tangible property of the company otherwise taxed, and the remainder will furnish the amount upon which the tax against the corporation may be levied.

5. ———: DOUBLE TAXATION. An assessment of the property of a domestic insurance company for taxation which includes its capital stock, its surplus, its contingent reserves, its gross premium receipts mentioned in section 10960, Ann. St. 1909, together with all of its other tangible property, is excessive, and amounts to double taxation, and should not be sustained.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*Frank M. Tyrrell, J. B. Strode* and *N. Z. Snell,* for appellants.

*Charles O. Whedon, contra.*

BARNES, J.

The Bankers Life Insurance Company is a domestic corporation, with a paid up capital stock of $100,000, having its principal place of business and its home office in Lincoln, Lancaster county, Nebraska. It is what is known as an old line or legal reserve life insurance company. It appears that on the 31st day of May, 1909, the president of that company returned to the deputy county assessor a schedule of its property for taxation in accordance with the provisions of section 10960, Ann. St. 1909, which schedule contained a statement of the gross amount of the premiums received by the company for its Nebraska business for the year ending December 31, 1908, less the amount of premiums on the same business ceded to other companies as reinsurance during the year 1908, also less premiums returned on account of the cancelation of a part of the business above mentioned, together with its office furniture and other personal property, amounting to the sum of $6,133.82; that thereafter, and on the 14th day of

June, 1909, the county assessor, without notice to the company, indorsed on the schedule above mentioned the following: "Office of County Assessor, Lancaster County, Nebraska. D. R. C. Miller, Assessor, Lincoln, Neb., June 14, 1909. The Bankers Life Insurance Company having returned premiums on new business for Lancaster county business only and office furniture and fixtures, not accounting for their capital stock, contingent reserves or surplus, cash in office or bank, gross premiums received at the Lincoln office or other forms of property, I have therefore, this 14th day of June, 1909, valued the capital stock, surplus, contingent reserves and other forms of property at $611,000, and added thereto $3,175, their local return on premiums, making a total of $614,175, and assessed it at $122,835. D. R. C. Miller County Assessor."

After making the foregoing indorsement, the county assessor immediately returned the schedule to the county clerk as provided by law. On the 19th day of June, 1907, the insurance company made written complaint to the county board of equalization of the action of the assessor increasing the valuation of its property for taxation as above set forth, and prayed the board to reduce its schedule to the amount shown by its own return thereon, and for such other relief "as shall be just and equitable in the premises." After a hearing upon the complaint above mentioned, the board of equalization overruled the same, confirmed the action of the assessor, and valued and assessed the complainant's property at the sum fixed by that officer in the corrected schedule. The insurance company thereupon appealed to the district court, where the order of the board was reversed and set aside, and the county has appealed from that judgment.

The record presents two questions for our determination: First. Was the action of the assessor and the board of equalization by which there was added the amount of the capital stock and surplus of the complainant to its schedule void for want of jurisdiction? Second. Is a domestic life insurance company required by the present

revenue law of this state to list its capital stock, surplus and contingent reserves for taxation to the extent and in the manner as determined by the county board of equalization in the instant case?

Concerning the first question, we think it may be said that sections 11012 and 11031, Ann. St. 1909, are sufficient in form and substance to authorize a county assessor to change the schedule of a taxpayer, and add thereto such property as he finds to have been omitted therefrom, to the end that all taxable property in this state shall contribute its just share to the support of the government; but before making such change or addition to the schedule he must give notice to the taxpayer of his intention to do so, and thus afford him an opportunity for a hearing. It seems clear from the authorities that such change or addition made without notice and without an opportunity for a hearing somewhere along the line of procedure is void, for it amounts to "taking the property of the citizen without due process of law." *Stuart v. Palmer,* 74 N. Y. 183; *Central of Georgia R. Co. v. Wright,* 207 U. S. 127; *Horton v. State,* 60 Neb. 701; *Dixon County v. Halstead,* 23 Neb. 697. We are therefore of opinion that the act of the assessor in adding the amount of the capital stock and surplus of the insurance company to its schedule, as returned by the proper officer, was void; and, if the company had filed no complaint and made no appearance before the board of equalization, it could have successfully resisted the payment of any tax levied upon the increased valuation of which it complains.

It appears, however, that the company in some way became aware of the change in its schedule, filed its complaint before the county board of equalization, and thereby gave the board jurisdiction to determine the matters complained of. It appears that the case of *Dixon County v. Halstead, supra,* was one where the facts were on all fours with those in the instant case. There the addition made by the assessor to Halstead's schedule was treated as a complaint made by him to the county board of equali-

zation; and it was stated that, if the board had served notice on the taxpayer and had given him a hearing, it would have had jurisdiction to act thereon. According to the rule there stated, it seems clear that the change of schedule in this case should have been treated as a complaint by the assessor to the board of equalization, and, the insurance company having appeared before that tribunal and obtained a hearing, it should not thereafter be permitted to challenge the proceeding for lack of jurisdiction.

This brings us to the consideration of the second, and what seems to us to be the main, question in this case. It is contended by the appellant that the capital stock and surplus of domestic life insurance companies should be listed for taxation in the manner pursued in this case by the taxing officers. While, on the other hand, it is claimed by the company that by the express provisions of our present revenue law such companies can only be taxed upon the gross amount of their premiums on Nebraska business for the year preceding the one in which the tax is levied.

Section 10960, Ann. St. 1909, which provides for the taxation of domestic insurance companies, reads as follows: "Every life, fire, or accident insurance company, or surety company, organized under the laws of this state, except fraternal beneficiary associations, and mutual companies that operate on the assessment plan, have no capital stock, and make no dividends, and whose scheme of insurance does not contemplate the return of any percentage of earnings or profits to policy holders, shall be taxed in the county, town, city, village and school district where the agent conducts the business upon the gross amount of premiums received by it for all Nebraska business done within the state during the preceding calendar year, less amount of same ceded to other companies as reinsurance through regularly authorized agents in this state and less premiums returned on canceled policies. Such gross receipts, less reinsurance and cancelations, shall be taken

as an item of property of that value and be assessed and taxed on the same percentage of such value as other property. The agent shall render the list and be personally liable for the tax. If he refuse to render the list, or make affidavit that the same is correct, the amount may be valued and assessed according to the best information of the assessor."

The foregoing section contains the only provisions of our revenue law relating directly to the taxation of domestic insurance companies. It thus appears that it must have been the intention of the legislature to encourage and foster the organization of such companies by placing them, so far as possible, on an equal footing with foreign insurance companies in the matter of taxation. While this purpose was a laudable one and has, without doubt, resulted in retaining large sums of money in this state which would otherwise have been paid to foreign companies, still this fact would not seem to justify the legislature in disregarding the mandate contained in section 1, art. IX of the constitution, which reads in part as follows: "The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property and franchises, the value to be ascertained in such manner as the legislature shall direct." By this mandatory provision the legislature was required to provide a just and equitable method of taxing our domestic insurance companies, and it would seem that it has failed to perform its full duty in that matter. It is intolerable, however, to contemplate a situation by which the large amount of capital profitably invested in the insurance business by domestic companies may wholly escape taxation and remain exempt from contributing its just share to the maintenance of the protection afforded it by the state. Therefore, in view of the requirement of the constitution, we are inclined to the opinion that the other and more general provisions of the revenue law are broad enough to require such companies to pay a tax upon

their capital stock; but the tax must be based upon the actual value of such capital stock, which, in the present condition of the revenue law, may be ascertained by methods analogous to the manner provided by sections 10955, 10967, Ann. St. 1909, which define methods for ascertaining the value of the capital stock of certain corporations.

So far as the record in this case shows, neither the assessor nor the county board of equalization adopted the method provided by that section. It appears that the assessor added to the value of the gross premiums and tangible property returned for taxation by the insurance company $100,000 as the value of its capital stock, and $511,000 as its alleged surplus and contingent reserves, arbitrarily and without investigation, and the county board of equalization adopted and affirmed his action, thereby overruling the complaint of the company and disregarding its prayer for relief. In express terms section 10955, *supra,* provides that after ascertaining the value of the capital stock of the corporation in the manner therein described, there shall be deducted therefrom the value of its real estate and tangible property otherwise assessed, and the remainder is to be taken and considered as the taxable value of its capital stock. It is a fundamental truth, which needs no demonstration, that when the value of the capital stock of a corporation has been correctly ascertained such value embraces not only its surplus, but all of its property and assets of every kind and nature. It therefore appears from the record that the action of the assessor and the order of the county board of equalization were unjust and inequitable, and were made and pronounced without legal authority, for such action clearly falls within the ban of double taxation, which the law does not tolerate or permit.

Finally, the change of the company's schedule cannot be sustained as a penalty for the failure of its officers to return the proper schedule, for such return was made in exact accordance with the provisions of the revenue law

and the demand made by the deputy assessor. So it may be said that there was no justification for the action of the taxing officers, of which the insurance company made complaint, and the judgment of the district court in reversing the order of the board of equalization was correct. It may be said that the statute relating to appeals in such cases confers upon the district court the power to make full investigation and determine the merits of the question presented, and such action should have been taken by the trial court.

For the foregoing reasons, the judgment of the district court reversing the order of the board of equalization should be, and is, affirmed; but, as the proceeding should not have been dismissed, the cause is remanded to the district court for such further proceedings as may be desired in accordance with the views expressed in this opinion.

JUDGMENT ACCORDINGLY.