Donald V. Cain, Jr., appellant,
v. Custer County Board of
Equalization, appellee.

___ N.W.2d ___

Filed August 28, 2015.    No. S-14-764.

1. **Taxation: Judgments: Appeal and Error.** Appellate courts review decisions rendered by the Tax Equalization and Review Commission for errors appearing on the record.

2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

3. **Taxation: Appeal and Error.** Questions of law arising during appellate review of Tax Equalization and Review Commission decisions are reviewed de novo on the record.

4. **Jurisdiction.** A question of jurisdiction is a question of law.

5. **Appeal and Error.** Although an appellate court ordinarily considers only those errors assigned and discussed in the briefs, the appellate court may, at its option, notice plain error.

6. ____. Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

7. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

8. **Statutes: Appeal and Error.** An appellate court will not read into a statute a meaning that is not there.

9. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

10. **Taxation: Statutes: Appeal and Error.** The meaning of a statute is a question of law, and a reviewing court is obligated to reach

its conclusions independent of the determination made by the Tax Equalization and Review Commission.

11. **Statutes: Legislature: Presumptions.** The Legislature is presumed to know the general condition surrounding the subject matter of a legislative enactment, and it is presumed to know and contemplate the legal effect that accompanies the language it employs to make effective the legislation.

12. **Constitutional Law: Rules of the Supreme Court: Notice: Statutes: Appeal and Error.** Strict compliance with Neb. Ct. R. App. P. § 2-109(E) (rev. 2014) is required in order for an appellate court to consider a challenge to the constitutionality of a statute.

13. **Taxation: Valuation: Presumptions: Proof.** In protests before a county board of equalization, the valuation by the assessor is presumed to be correct. The burden of proof rests upon the taxpayer to rebut this presumption and to prove that an assessment is excessive.

14. **Counties: Evidence.** The standard generally applicable in proceedings before county boards, including monetary disputes, is a preponderance, or greater weight, of the evidence.

15. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the Tax Equalization and Review Commission. Reversed and remanded.

Patrick M. Heng and Lindsay E. Pedersen, of Waite, McWha & Heng, and Steven P. Vinton, of Bacon & Vinton, L.L.C., for appellant.

Steven R. Bowers, Custer County Attorney, and Glenn A. Clark for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

WRIGHT, J.

## I. NATURE OF CASE

In 2012, the Custer County assessor (Assessor) increased the assessed value of property owned by Donald V. Cain, Jr., from $734,968 to $1,834,925. Cain challenged this valuation increase by filing petitions with the Tax Equalization

and Review Commission (TERC) pursuant to Neb. Rev. Stat. § 77-1507.01 (Reissue 2009). A divided panel of two TERC commissioners affirmed the Assessor's increased valuations for 2012, and Cain appeals. Because we find plain error in the standard of review applied by TERC to Cain's petitions, we reverse the order of TERC which affirmed the Assessor's valuations and remand the cause for reconsideration on the record using the preponderance, or greater weight, of the evidence standard applicable to protests before a county board of equalization.

## II. SCOPE OF REVIEW

[1,2] Appellate courts review decisions rendered by TERC for errors appearing on the record. *Krings v. Garfield Cty. Bd. of Equal.*, 286 Neb. 352, 835 N.W.2d 750 (2013). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

[3,4] Questions of law arising during appellate review of TERC decisions are reviewed de novo on the record. *Id.* A question of jurisdiction is a question of law. *Sherman T. v. Karyn N.*, 286 Neb. 468, 837 N.W.2d 746 (2013).

[5,6] Although an appellate court ordinarily considers only those errors assigned and discussed in the briefs, the appellate court may, at its option, notice plain error. *Connelly v. City of Omaha*, 284 Neb. 131, 816 N.W.2d 742 (2012). Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Id.*

## III. FACTS

Cain owns 10 contiguous parcels of land in Custer County, Nebraska, which total over 1,093 acres. Approximately 70 percent of the property, or 756 acres, is irrigated "native grass" upon which Cain grazes cattle. The remainder of the property is nonirrigated grassland.

In 2012, as the result of a change in the way the Assessor classified irrigated grassland for purposes of valuation, there was a dramatic increase in the assessed value of the irrigated portions of Cain's property. The manner in which the Assessor classified and valued the nonirrigated portions of his property did not change. Almost entirely due to the change in valuation of the irrigated grassland, the total assessed value of the parcels increased from $734,968 to $1,834,925.

In situations such as this, where there is a change in the assessed value of real property, Neb. Rev. Stat. § 77-1315(2) (Supp. 2011) requires the county assessor to send notice to the property owners on or before June 1. But in the instant case, for reasons that are not clear from the record, Cain never received such notice. He did not learn of the change in assessed values until November 2012, when he contacted the Assessor.

By the time Cain learned of the change in assessed values, the deadline to file protests with the county board of equalization pursuant to Neb. Rev. Stat. § 77-1502(1) (Cum. Supp. 2014) had passed. Consequently, he sought to challenge the valuation increases pursuant to § 77-1507.01. This statute provides that "on or before December 31," a person may petition TERC "to determine the actual value or special value of real property . . . if a failure to give notice prevented timely filing of a protest or appeal provided for in sections 77-1501 to 77-1510."

On December 28, 2012, Cain petitioned TERC to determine the actual value of each parcel pursuant to § 77-1507.01. He alleged that he had not received the notices of valuation increase required by § 77-1315(2) and that he would have filed valuation protests with regard to each parcel if he had received the required notices. He claimed that the actual value of the parcels was $778,625 and asked TERC to hold a hearing to determine the actual value of his property for tax year 2012.

TERC held two separate hearings on Cain's petitions. On each occasion, the hearing was held before commissioners

Nancy J. Salmon and Thomas D. Freimuth. At the time of these hearings, TERC had three commissioners, and two commissioners constituted a quorum to transact business. See Neb. Rev. Stat. §§ 77-5003(1) and 77-5005(2) (Cum. Supp. 2014).

The first hearing was a "show cause hearing" to determine if TERC had jurisdiction over Cain's petitions. The jurisdictional question was whether Cain was entitled to file his petitions pursuant to § 77-1507.01. TERC determined (1) that Cain had "provided sufficient evidence that the . . . Assessor failed to provide proper notice as required by . . . section 77-1315"; (2) that "this failure prevented [Cain] from timely filing protests by June 30, 2012, under . . . section 77-1502"; and (3) that Cain "had until December 31, 2012, to file appeals with [TERC] concerning his tax valuations under . . . section 77-1507.01." Therefore, TERC concluded that it had jurisdiction to consider Cain's petitions.

At a hearing on the merits, Salmon and Freimuth heard evidence that for purposes of valuation, the Assessor has divided Custer County into five "market areas" based on her analysis of real estate markets and recent sales. Market area 1 covers the majority of Custer County and is the market area with the highest average sale price. Within each market area, property is classified according to a use category (irrigated, dryland, grassland, canyon, Sandhills-type land, "frequently flooded," and waste) and a soil type (a numeric value between 1 and 4, with 1 representing the highest quality). For each market area, there is a standard value per acre for property of the same use and soil type.

Cain's property is located within market area 1 and has been valued as part of that market area for some time. In terms of use category, for tax year 2012, the Assessor classified the non-irrigated portions of Cain's property (approximately 337 acres) as grassland and valued them between $495 and $505 per acre, depending on soil type. The Assessor classified the irrigated parts of his property (approximately 756 acres) as irrigated

land. Almost 600 of these irrigated acres were valued at $2,100 per acre, because they were determined to have type "4A" soil, which is the poorest quality. The remaining irrigated acres were valued between $2,105 and $2,930 per acre, depending on soil type.

Cain adduced evidence that the irrigated portions of his land had been "inequitably classified" and valued. He presented testimony that in 2012, the irrigated portions of his property were valued similarly to irrigated cropland, but that his property was not comparable to irrigated cropland in terms of soil type or topography. He also presented testimony that his property was located in market area 1 for purposes of valuation but that because of the soil type, it was more comparable in value to the property in market area 2 or area 3. Cain argued that a "more equitable" way of valuing his property would be to lower its assessed value to the level of the irrigated grassland in market area 2 or area 3.

The Assessor explained how she classified Cain's property. She testified that Cain's property had a different soil type than the properties in market area 2, even though both had sandy soils. She also testified that under the relevant statutes and regulations, she was allowed to differentiate between parcels of irrigated land according to soil type but not actual use of the land and that, as a consequence, she could not treat irrigated grassland differently than other irrigated land.

On July 31, 2014, Salmon entered an order on behalf of TERC on the merits of Cain's petitions. She first addressed whether the lack of notice rendered the valuation increases void. She stated that in prior cases, this court held that assessments were void where there was a failure to provide the required notice. But she concluded that these cases were "supersede[d]" by the adoption of § 77-1507.01. She explained as follows:

> In cases concerning failures to provide sufficient notice, the [Nebraska Supreme Court and Court of Appeals] concluded that because the taxpayer had lost its access

to review, the increased assessment was void. However, all of these cases were prior to the adoption of . . . section 77-1507.01.

Under . . . section 77-1507.01 taxpayers now have an avenue for appeal by December 31 of each tax year if notice was not timely provided. [TERC], therefore, has jurisdiction over petitions which it did not otherwise have prior to the passage of the statute. Because [TERC] now has jurisdiction and the taxpayer has an avenue for review, the previous Nebraska Supreme Court and Court of Appeals decisions are no longer applicable; it appears that . . . section 77-1507.01 now supersedes these decisions in instances where a taxpayer petitions [TERC] prior to December 31 of a tax year where a failure of notice from the County Assessor or County Board prevents timely filing under other statutes.

Salmon therefore dismissed Cain's argument that the increased assessments were void due to lack of notice. Freimuth agreed with this determination.

On the merits, Salmon rejected Cain's argument that his property should have been valued within market area 2 or area 3. She concluded that there was not clear and convincing evidence that the Assessor's decision to classify Cain's property within market area 1 for 2012 was arbitrary or unreasonable. She explained that the soil types on Cain's property were "more suitable to irrigation and production than the soils located in Market Area 2 and Market Area 3" and that this difference in soil "support[ed] the . . . Assessor['s] assertion that the Subject Property [was] more valuable than irrigated grassland in Market Area 2 and Market Area 3."

Freimuth dissented from the determination that the increased valuations were neither arbitrary nor unreasonable. He stated that he would find Cain had "provided sufficient evidence to show that the [Assessor's] valuation determinations . . . were arbitrary or unreasonable . . . in part because the Subject Property is unique as compared to other Market Area 1

property and is substantially similar to the northern portion of Custer County (i.e., Market Areas 2 and 3)." Freimuth would have accepted Cain's opinion as to the actual value of the property.

Neb. Rev. Stat. § 77-5016(13) (Cum. Supp. 2014) provides that TERC "shall deny relief to the appellant or petitioner in any hearing or proceeding unless a majority of the commissioners present determine that the relief should be granted." As such, given that Salmon and Freimuth did not agree, TERC denied Cain's petitions and affirmed the Assessor's increased valuations for 2012.

Cain timely appeals. Pursuant to our statutory authority to regulate the dockets of the appellate courts of this state, we moved the case to our docket. See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

## IV. ASSIGNMENTS OF ERROR

Cain assigns, reordered and restated, that TERC erred (1) in determining that it had jurisdiction over the case; (2) in determining that the notice required under § 77-1315(2) was not essential to the validity of the assessments; (3) in denying Cain due process; (4) in failing to properly apply the standard of review; and (5) in finding that he had failed to meet his burden of establishing by clear and convincing evidence that the Assessor's valuations were arbitrary, capricious, and unreasonable.

## V. ANALYSIS

The issues tried by TERC were (1) whether the Assessor failed to provide proper notice under § 77-1315(2) and thereby prevented Cain from timely filing protests pursuant to § 77-1502(1), (2) whether the Assessor's failure to provide proper notice voided the 2012 assessments on Cain's property, and (3) whether the Assessor's valuations for tax year 2012 were consistent with the market value of his property. As will be discussed below, Cain raises numerous other issues on appeal that were not presented to TERC.

1. Jurisdiction

(a) Final Order

[7] We first address whether TERC's decision was a valid order. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Breci v. St. Paul Mercury Ins. Co.*, 288 Neb. 626, 849 N.W.2d 523 (2014).

The dissent to this opinion argues that under § 77-1507.01, when a taxpayer petitions TERC after having been denied a hearing before a county board of equalization, TERC must strictly comply with the same procedural requirements for a protest hearing before the county board of equalization. In counties under township organization, like Custer County, questions before the board of equalization "shall be determined by the votes of a majority of the supervisors present." See Neb. Rev. Stat. § 23-277 (Reissue 2012). For this reason, the dissent asserts that the two-member panel that heard Cain's petitions could not enter a decision without a tie-breaking vote and that the order entered was consequently invalid.

We respectfully disagree with the dissent. Given that § 77-1507.01 has never before been interpreted by this court, there is no case law which provides that a hearing held under § 77-1507.01 must strictly comply with the procedures for a protest before a county board of equalization. More important, the statute itself does not impose such a requirement. Section 77-1507.01 provides in its entirety as follows:

Any person otherwise having a right to appeal may petition [TERC] in accordance with section 77-5013, on or before December 31 of each year, to determine the actual value or special value of real property for that year if a failure to give notice prevented timely filing of a protest or appeal provided for in sections 77-1501 to 77-1510.

[8] Section 77-1507.01 does not specify that a hearing held pursuant to this section must strictly conform to the

procedural requirements for a protest before a county board of equalization. Nor does the plain language of § 77-1507.01 state that the procedural rules governing other TERC proceedings do not apply to a hearing held pursuant to this section. Therefore, we find that a hearing held under § 77-1507.01 shall follow the procedural rules applicable to other proceedings before TERC. An appellate court will not read into a statute a meaning that is not there. See *Kerford Limestone Co. v. Nebraska Dept. of Rev.*, 287 Neb. 653, 844 N.W.2d 276 (2014).

Under the procedural rules which normally govern TERC proceedings and which we find applicable in the instant case, the order denying Cain's petitions was a valid order. Section 77-5005(2) provides that a "majority of [TERC] shall at all times constitute a quorum to transact business, and one vacancy shall not impair the right of the remaining commissioners to exercise all the powers of [TERC]." At all times relevant to this case, TERC had three commissioners. See § 77-5003(1). Consequently, two commissioners constituted a majority and could transact business under § 77-5005(2).

The two commissioners who heard Cain's petitions did not agree about whether to grant the relief requested by Cain. But this did not prevent TERC from entering an order denying Cain's petitions. Section 77-5016 provides that "[i]n any hearing or proceeding heard by [TERC]: . . . (13) [TERC] shall deny relief to the appellant or petitioner in any hearing or proceeding unless a majority of the commissioners present determine that the relief should be granted." Since one commissioner did not constitute a majority, pursuant to § 77-5016(13), TERC was required to deny Cain's petitions. In effect, the tie between the two commissioners was broken by § 77-5016(13), which required TERC to enter an order denying Cain's petitions. We therefore conclude that the order entered by a divided panel of two commissioners was a valid order.

[9] In his petition for review, Cain alleged that the use of a two-member panel violated his due process. His assignment

of error related to due process may be sufficiently broad to encompass this argument. However, he did not argue in his brief that the use of a two-member panel was a violation of due process. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *Jeremiah J. v. Dakota D.*, 287 Neb. 617, 843 N.W.2d 820 (2014). Additionally, during oral arguments, Cain took the position that two commissioners constituted a quorum and that he needed the votes of two commissioners to be granted relief. He did not assert that the use of a two-member panel violated due process. Accordingly, we do not address whether the use of a two-member panel violated Cain's due process.

### (b) Increased Assessments
### Not Void

We next address Cain's argument that TERC did not have jurisdiction over his petitions, because the Assessor's failure to provide the notices of increased valuation required by § 77-1315(2) rendered the assessments void. If TERC lacked jurisdiction, we acquire no jurisdiction. See *Carlos H. v. Lindsay M.*, 283 Neb. 1004, 815 N.W.2d 168 (2012).

For purposes of our analysis, we find that the Assessor did not provide the necessary notices to Cain. Both TERC commissioners found that the Assessor failed to provide the notices of increased valuation required by § 77-1315(2). And although the county board of equalization strenuously argues that the Assessor actually "complied with the notice statute," it did not file a cross-appeal to challenge TERC's finding on the issue. See brief for appellee at 17. As such, TERC's factual finding that the Assessor did not provide the notices required by § 77-1315(2) is not challenged on appeal, and it is therefore an established fact for purposes of our analysis.

We consider whether this lack of notice voided the assessments and thereby deprived TERC of jurisdiction to consider Cain's petitions. Cain argues that under our case law, the

assessments based upon the increased valuations were voided by the Assessor's failure to provide the notice required by § 77-1315(2), which in turn prevented TERC from acquiring jurisdiction. Conversely, the county board of equalization argues that because Cain filed petitions pursuant to § 77-1507.01, the assessments were not void.

[10] Based upon our interpretation of § 77-1507.01, we conclude that the assessments on Cain's property were not void for lack of notice and that TERC had jurisdiction to consider Cain's petitions. "The meaning of a statute is a question of law, and a reviewing court is obligated to reach its conclusions independent of the determination made by [TERC]." *Falotico v. Grant Cty. Bd. of Equal.*, 262 Neb. 292, 295, 631 N.W.2d 492, 496 (2001).

### (i) Statutory Background

In the event that the assessed value of real property is increased for any particular tax year, our statutes require notices to be sent to the taxpayer at various points throughout the proceedings arising from such increase. See §§ 77-1315(2) and 77-1502(6) and Neb. Rev. Stat. §§ 77-1504 and 77-1507(1) and (2) (Cum. Supp. 2014). These notices inform the taxpayer of either an increase in the assessed value of real property or the decision of a county board of equalization on a protest. See §§ 77-1315(2), 77-1502(6), 77-1504, and 77-1507(1) and (2). There are specific deadlines for protesting increased valuations and for appealing decisions of a county board of equalization. See §§ 77-1502(1), 77-1504, and 77-1507(1) and (3), and Neb. Rev. Stat. § 77-1510 (Reissue 2009). Consequently, the failure of the county to provide one of the required notices may prevent a taxpayer from filing a protest or appeal to which he otherwise would have been legally entitled.

Prior to 2005, there was no statutory remedy for a taxpayer who was prevented by a lack of notice from filing a protest or appeal. But in 2005, the Legislature enacted § 77-1507.01 to allow the filing of petitions directly with TERC "if a failure

to give notice prevented timely filing of a protest or appeal provided for in sections 77-1501 to 77-1510."

### (ii) Case Law

Prior to the enactment of § 77-1507.01, we considered several increased valuation cases in which a lack of proper notice prevented the taxpayer from filing a protest or appeal. See, e.g., *Falotico, supra*; *Reed v. County of Hall*, 199 Neb. 134, 256 N.W.2d 861 (1977); *Gamboni v. County of Otoe*, 159 Neb. 417, 67 N.W.2d 489 (1954), *disapproved on other grounds, Hansen v. County of Lincoln*, 188 Neb. 461, 197 N.W.2d 651 (1972), *modified on denial of rehearing* 188 Neb. 798, 197 N.W.2d 655; *Rosenbery v. Douglas County*, 123 Neb. 803, 244 N.W. 398 (1932). In each of these cases, we concluded that the assessments which had been based upon the increased valuations (increased assessments) were void due to lack of proper notice. We review these cases and their applicability to the case at bar.

In *Rosenbery, supra*, the taxpayer had not received the notice of increased valuation required by a predecessor to § 77-1315. The lack of notice prevented the taxpayer from protesting the valuation before the county board of equalization, and so he brought an action to enjoin the collection of taxes based on the increased assessment. The district court denied relief, but we concluded that the taxpayer was entitled to an injunction, because the increased assessment was void due to lack of notice. We explained that it was contrary to the intent of the Legislature and to the decisions of other state courts to impose taxes based on an increased valuation where the taxpayer had not received notice and an opportunity to be heard. We reached similar conclusions in *Gamboni, supra*, and *Reed, supra*, which also involved the failure to provide proper notice of increased valuation under § 77-1315.

In *Falotico v. Grant Cty. Bd. of Equal.*, 262 Neb. 292, 631 N.W.2d 492 (2001), the assessed values for several pieces of property were increased by the county assessor for tax

year 1999 and the taxpayers protested. The county board of equalization denied the protests, but it did not notify the taxpayers of the decision within the time set by § 77-1502. Consequently, the taxpayers' appeal to TERC was untimely. Nonetheless, TERC heard the appeal and ultimately sustained the county board of equalization's motion to dismiss for lack of evidence.

On appeal from TERC's order, we determined that the notice required by § 77-1502 was essential to the validity of the increased assessments. We explained that the notice required by § 77-1502 was intended to

> ensure[] that a taxpayer will be notified of the board's decision in order that the taxpayer may have time to prepare and file an appeal within the statutory 30-day period. Without this notice provision, the board could very well delay notification to the taxpayer, thereby preventing review of the board's decision. Likewise, if a violation of this provision were without consequence, the board could similarly engage in such delay and defeat the taxpayer's appeal, effectively denying the taxpayer the process that is due under the statutes.

See *Falotico*, 262 Neb. at 298-99, 631 N.W.2d at 498. Viewing these facts in light of our decision in *Rosenbery, supra*, we concluded that because there was a failure to comply with the notice requirement of § 77-1502, the increased valuations were void. Accordingly, we held that TERC did not have jurisdiction over the appeal. *Falotico, supra*, is the last case in which we held an increased assessment void due to lack of notice.

### (iii) Resolution

In our cases before the Legislature enacted § 77-1507.01, our rationale for declaring increased assessments void if the taxpayer did not receive proper statutory notice was based upon a denial to the taxpayer of the process due under the statutes. See, *Falotico, supra*; *Reed v. County of Hall*, 199

Neb. 134, 256 N.W.2d 861 (1977); *Gamboni v. County of Otoe*, 159 Neb. 417, 67 N.W.2d 489 (1954), *disapproved on other grounds, Hansen v. County of Lincoln*, 188 Neb. 461, 197 N.W.2d 651 (1972), *modified on denial of rehearing* 188 Neb. 798, 197 N.W.2d 655; *Rosenbery v. Douglas County*, 123 Neb. 803, 244 N.W. 398 (1932). The process being denied by the lack of notice was the opportunity either to protest an increased assessment or to appeal from the county board of equalization.

But the failure of the county to provide notice of an increased assessment or the county board of equalization's decision no longer deprives a taxpayer of an opportunity to be heard on the increased assessment or decision. After our decision in *Falotico v. Grant Cty. Bd. of Equal.*, 262 Neb. 292, 631 N.W.2d 492 (2001), the Legislature adopted § 77-1507.01. See 2005 Neb. Laws, L.B. 15, § 5. Under § 77-1507.01, a taxpayer who does not receive notice has the opportunity to be heard by filing a petition directly with TERC. Because this opportunity to be heard now exists, we conclude that the failure to provide notice of an increased assessment or the decision of a county board of equalization no longer renders increased assessments void for a denial of due process.

[11] The language of § 77-1507.01 confirms that a lack of notice no longer renders an increased assessment void. When it enacted § 77-1507.01, the Legislature was aware of our past decisions that the failure to provide notice rendered an increased assessment void specifically because it deprived the taxpayer of an opportunity to be heard. See, *Falotico, supra*; *Reed, supra*; *Gamboni, supra*; *Rosenbery, supra*. Section 77-1507.01 was enacted subsequent to these decisions. See 2005 Neb. Laws, L.B. 15, § 5. The Legislature is presumed to know the general condition surrounding the subject matter of the legislative enactment, and it is presumed to know and contemplate the legal effect that accompanies the language it employs to make effective the legislation. *State ex*

*rel. Wagner v. Gilbane Bldg. Co.*, 276 Neb. 686, 757 N.W.2d 194 (2008).

In light of the knowledge of our past decisions, it is significant that the Legislature adopted language which expressly created a new procedure that allowed taxpayers who had not received notice to protest increased assessments or to appeal decisions of a county board of equalization if the taxpayer had not received the required statutory notice. See § 77-1507.01. By authorizing such protests and appeals, the Legislature eliminated the circumstance (no opportunity to be heard) which was the basis for our decisions declaring increased assessments void due to lack of notice.

Moreover, the Legislature provided that TERC's role within this new procedure would be "to determine the actual value or special value of real property for that year." See § 77-1507.01. TERC could not reach the issue of valuation if a failure of notice rendered an assessment void, because every petition filed under § 77-1507.01 would then be dismissed for lack of jurisdiction due to the void assessment. Therefore, based on the language of § 77-1507.01, we conclude the Legislature intended that the failure to provide notice would no longer render increased assessments void.

TERC correctly determined that the assessments were not void and that it had jurisdiction under § 77-1507.01. Cain did not receive the notices of increased valuation required by § 77-1315(2) and did not learn of the changes until long after the deadline for filing protests pursuant to § 77-1502(1) had passed. Because the lack of notice prevented him from filing protests, § 77-1507.01 permitted him to file petitions with TERC before December 31, 2012, which was done. Because this opportunity was available, none of the increased assessments were void due to lack of notice. TERC had jurisdiction over Cain's petitions, and we have jurisdiction over this appeal.

## 2. CONSTITUTIONALITY
### OF § 77-1507.01

At oral argument, Cain asserted for the first time that § 77-1507.01 was unconstitutional. He claimed that it deprived him of due process because he did not have a hearing before the county board of equalization.

Cain's assignment of error related to due process might be sufficiently broad to encompass this argument. But he did not argue in his brief that § 77-1507.01 deprived him of due process because he did not have a hearing before the county board of equalization. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *Jeremiah J. v. Dakota D.*, 287 Neb. 617, 843 N.W.2d 820 (2014).

[12] Moreover, Cain did not satisfy the procedural prerequisites for appellate review of such a claim. Neb. Ct. R. App. P. § 2-109(E) (rev. 2014) provides:

> A party presenting a case involving the federal or state constitutionality of a statute must file and serve notice thereof with the Supreme Court Clerk by a separate written notice or by notice in a Petition to Bypass at the time of filing such party's brief. If the Attorney General is not already a party to an action where the constitutionality of the statute is in issue, a copy of the brief assigning unconstitutionality must be served on the Attorney General within 5 days of the filing of the brief with the Supreme Court Clerk; proof of such service shall be filed with the Supreme Court Clerk.

Strict compliance with § 2-109(E) is required in order for an appellate court to consider a challenge to the constitutionality of a statute. *Mid City Bank v. Douglas Cty. Bd. of Equal.*, 260 Neb. 282, 616 N.W.2d 341 (2000). Although Cain served the Attorney General with a copy of his brief, he did not file a notice of constitutional question. Therefore, because Cain did not comply with § 2-109(E) or with our rules regarding

the assignment and argument of errors, we do not address his claim regarding the constitutionality of § 77-1507.01.

### 3. Plain Error

In considering Cain's petitions filed pursuant to § 77-1507.01, TERC applied the standard of review found in § 77-5016(9). At the hearing before TERC, Cain did not object to the application of this standard. And although Cain now assigns that the manner in which TERC applied § 77-5016(9) was error, he does not argue that TERC used the wrong standard of review.

Although an appellate court ordinarily considers only those errors assigned and discussed in the briefs, the appellate court may, at its option, notice plain error. *Connelly v. City of Omaha*, 284 Neb. 131, 816 N.W.2d 742 (2012). Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Id.* In the instant case, we note plain error in the standard of review applied by TERC to Cain's petitions.

TERC applied the standard of review found in § 77-5016(9), which provides:

> In all appeals, excepting those arising under section 77-1606, if the appellant presents no evidence to show that the order, decision, determination, or action appealed from is incorrect, the commission shall deny the appeal. If the appellant presents any evidence to show that the order, decision, determination, or action appealed from is incorrect, such order, decision, determination, or action shall be affirmed unless evidence is adduced establishing that the order, decision, determination, or action was unreasonable or arbitrary.

We have interpreted this section as providing that there is """"a presumption that a board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action.""" See *JQH La Vista Conf. Ctr. v. Sarpy Cty. Bd. of*

*Equal.*, 285 Neb. 120, 124, 825 N.W.2d 447, 451 (2013). The presumption "remains until rebutted by clear and convincing evidence." See *Pittman v. Sarpy Cty. Bd. of Equal.*, 258 Neb. 390, 398, 603 N.W.2d 447, 453 (1999). See, also, *Brenner v. Banner Cty. Bd. of Equal.*, 276 Neb. 275, 753 N.W.2d 802 (2008). "'"From that point forward, the reasonableness of the valuation fixed by the board of equalization becomes one of fact based upon all the evidence presented. . . ."'" See *JQH La Vista Conf. Ctr.*, 285 Neb. at 124, 825 N.W.2d at 451-52.

TERC should not have applied § 77-5016(9) to Cain's petitions. Section § 77-5016(9) sets forth the standard of review applicable in "all appeals" before TERC. But the instant case was not before TERC as an appeal from the board of equalization. Pursuant to § 77-1507.01, Cain "petition[ed]" TERC directly without first appearing before the board of equalization. Consequently, TERC's role in the instant case was not that of an appellate body. Because the lack of notice prevented Cain from filing protests with the board of equalization, TERC was not reviewing decisions of the board of equalization. Rather, pursuant to § 77-1507.01, TERC was in a position to perform an initial review of Cain's challenges to the increased assessments.

In performing this initial review of the increased assessments on Cain's property, TERC should have applied the same standards and burdens of proof as the board of equalization would have used in a protest. As explained above, in enacting § 77-1507.01, the Legislature provided a remedy to taxpayers who were prevented by a lack of notice from filing protests with the board of equalization. It did so by creating a new procedure for protesting increased valuations by filing petitions directly with TERC. This substitute protest should be governed by the same standard of review and corresponding burdens of proof as a protest before a county board of equalization.

[13,14] In protests before a county board of equalization, "the valuation by the assessor is presumed to be correct."

See *Helvey v. Dawson Cty. Bd. of Equal.*, 242 Neb. 379, 386, 495 N.W.2d 261, 267 (1993). The burden of proof rests upon the taxpayer to rebut this presumption and "'to prove that an assessment is excessive.'" See *Ainsworth v. County of Fillmore*, 166 Neb. 779, 784, 90 N.W.2d 360, 364 (1958). Our case law indicates that the standard generally applicable in proceedings before county boards, including monetary disputes, is a preponderance, or greater weight, of the evidence. See *Wetovick v. County of Nance*, 279 Neb. 773, 782 N.W.2d 298 (2010). The statutes governing protests before the board of equalization do not alter this burden. See § 77-1502. As such, in protests before the board of equalization, the taxpayer can rebut the presumption by a preponderance, or greater weight, of the evidence. Cain should have been held to this same standard in the TERC proceedings on his petitions, which constituted an initial review of his challenge to the increased assessments.

By considering Cain's petitions under § 77-5016(9), TERC erroneously increased the burden placed upon him as the taxpayer from a preponderance, or greater weight, of the evidence to a clear and convincing standard. If uncorrected, this error would damage the fairness of the proceedings authorized by § 77-1507.01, where a lack of notice prevented the filing of a protest with the board of equalization. We therefore conclude that TERC's consideration of Cain's petitions using the appellate standard of review described in § 77-5016(9) constituted plain error. We reverse TERC's decision and remand the cause for reconsideration on the record of Cain's petitions using the preponderance, or greater weight, of the evidence standard applicable to protests before a county board of equalization.

### 4. REMAINING ASSIGNMENTS OF ERROR

[15] Because we have determined that TERC's order should be reversed, we do not address Cain's remaining assignments

of error. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Tierney v. Four H Land Co.*, 288 Neb. 586, 852 N.W.2d 292 (2014).

## VI. CONCLUSION

For the foregoing reasons, we reverse the decision of TERC which affirmed the Assessor's valuations of Cain's property for purposes of tax year 2012. We remand the cause for reconsideration on the record using the preponderance, or greater weight, of the evidence standard applicable to protests before a county board of equalization.

REVERSED AND REMANDED.

CONNOLLY, J., dissenting

I dissent. I disagree with the majority's conclusion that two TERC commissioners can render a valid decision on a taxpayer's assessment protest if they disagree. I believe that TERC is bound by the rules that would apply to a protest hearing before the county board of equalization. So does the majority—to an extent. It finds plain error in TERC's application of a clear and convincing standard of proof and holds that TERC must apply the same standard that would apply before a county board of equalization. But it seems that it inconsistently concludes that TERC is not bound by the rules relevant to whether the adjudicating body has issued a valid decision. I believe that our case law compels TERC to comply with those rules, or the increased assessment is void. And those rules require a decision on the merits, not a statutory default decision. Because TERC failed to render a valid decision under the statutes that apply to protest hearings, I conclude that there is no final order and that we do not have jurisdiction to consider the merits of the appeal. I would remand the cause for a tie-breaking decision on the merits.

No statute governing protest hearings provides that taxpayers shall be denied relief if a county board of equalization splits evenly on the action to be taken. In my opinion,

absent a default statute, a split of opinion among fact finders is a failure to act, particularly under the protest statutes. Neb. Rev. Stat. § 77-1502(4) (Cum. Supp. 2014) provides that no protest hearing shall be held before a single county commissioner or supervisor, and there are no default rules affirming an assessor's valuation if the board fails to issue a decision. Additionally, as the majority opinion acknowledges, in Custer County, a majority vote by all the county supervisors present is required to determine any matter before the board.[1]

I recognize that Neb. Rev. Stat. § 77-5016(13) (Cum. Supp. 2014) provides that TERC "shall deny relief to the appellant or petitioner in any hearing or proceeding unless a majority of the commissioners present determine that the relief should be granted." But the Legislature enacted § 77-5016(13) in 2003,[2] before it enacted Neb. Rev. Stat. § 77-1507.01 (Reissue 2009) in 2005.[3] Before 2005, TERC heard *petitions* from a county board of equalization, but not from taxpayers seeking an original evidentiary hearing to protest an increased assessment.[4] So I do not believe the majority rule under § 77-5016(13) was intended to apply to a protest hearing. More important, our case law precluded TERC from relying on this statute to conclude that it had rendered a valid decision. Under our case law, an increased assessment is valid only if the taxpayer received the procedural protections afforded at every stage of the assessment proceedings. And I disagree with the majority's characterization of our case law to eliminate strict compliance with those procedural requirements.

Obviously, due process requires adequate notice and the opportunity to be heard when the State seeks to deprive persons of their property interests.[5] So it has always been

---

[1] See Neb. Rev. Stat. § 23-277 (Cum. Supp. 2014).

[2] 2003 Neb. Laws, L.B. 291, § 9.

[3] See 2005 Neb. Laws, L.B. 15, § 5.

[4] See Neb. Rev. Stat. § 77-1504.01 (Cum. Supp. 2014).

[5] See *Potter v. Board of Regents*, 287 Neb. 732, 844 N.W.2d 741 (2014).

the law in this state that a county board of assessment lacks jurisdiction to increase a property assessment if the taxpayer did not receive notice of the increase and an opportunity to be heard—such assessments are void.[6] In *Rosenbery v. Douglas County*,[7] where the taxpayer received no notice of an increased assessment until after the county board had adjourned, we held, largely out of due process concerns, that the county should be enjoined from collecting taxes on the increased valuation. But we did not simply hold that a county must provide notice and an opportunity to be heard. We agreed with other state courts that the statutory procedures for levying property taxes are mandatory and must be strictly observed because they are intended to protect taxpayers and safeguard against excessive levies.

We expanded on this reasoning in *Gamboni v. County of Otoe*.[8] There, the county assessor sent notice to the taxpayers of increased assessments, but the notice did not provide the date that the county board would convene, as required by statute. We recognized that the board's meeting time was set out by statute, that the board had published notice of the increases and the deadline for filing protests, and that most of the property owners had received notice of the increased assessments for their tax returns. But we concluded that

---

[6] See, *Northwestern Bell Tel. Co. v. State Board of Equalization and Assm't.*, 119 Neb. 138, 227 N.W. 452 (1929); *Crane Co. v. Douglas County*, 112 Neb. 365, 199 N.W. 791 (1924); *Farmers Co-operative Creamery & Supply Co. v. McDonald*, 100 Neb. 33, 158 N.W. 369 (1916); *Brown v. Douglas County*, 98 Neb. 299, 152 N.W. 545 (1915); *Bankers Life Ins. Co. v. County Board of Equalization*, 89 Neb. 469, 131 N.W. 1034 (1911); *Grant v. Bartholomew*, 57 Neb. 673, 78 N.W. 314 (1899); *Spiech v. Tierney*, 56 Neb. 514, 76 N.W. 1090 (1898); *South Platte Land Co. v. Buffalo County*, 7 Neb. 253 (1878).

[7] *Rosenbery v. Douglas County*, 123 Neb. 803, 244 N.W. 398 (1932).

[8] *Gamboni v. County of Otoe*, 159 Neb. 417, 67 N.W.2d 489 (1954), *disapproved in part on other grounds, Hansen v. County of Lincoln*, 188 Neb. 461, 197 N.W.2d 651 (1972), *modified on denial of rehearing* 188 Neb. 798, 197 N.W.2d 655.

these actions did not fulfill the statutory requirements. In rejecting the argument that the taxpayers had adequate notice of the increases, we relied on the strict compliance rule from *Rosenbery*:

> What has been said of the notice itself being mandatory we think is equally applicable to what the Legislature has said shall be contained herein. . . .
>
>    . . . .
>
> We find the statute requires the notice must be given *by the assessor* and that it must specifically *contain all the information the statute requires* shall be set forth therein.[9]

In sum, while it is true that due process requires notice and an opportunity to be heard, our case law goes beyond minimal due process requirements. We have required strict compliance with statutory procedures for increasing property assessment because they are intended to protect taxpayers and safeguard against excessive levies. Our more recent decision in *Falotico v. Grant Cty. Bd. of Equal.*[10] reaffirmed these principles.

In *Falotico*, we required counties to strictly comply with the statutory time limit for notifying a taxpayer of a county board's decision. Because the notice was late, the taxpayer did not file a timely appeal with TERC. In relying on *Rosenbery*, we reiterated its strict compliance requirement: "[T]he procedure prescribed by the Legislature in respect to levying a tax must be strictly observed. We further stated [in *Rosenbery*] that the statutory provision relating to a tax levy, the objects of which are the protection of taxpayers and to safeguard against excessive levies, is mandatory."[11]

We concluded that under *Rosenbery* and *Gamboni*, all statutory requirements intended to protect taxpayers and guard

---

[9] *Id.* at 426-27, 67 N.W.2d at 497 (emphasis supplied).

[10] *Falotico v. Grant Cty. Bd. of Equal.*, 262 Neb. 292, 631 N.W.2d 492 (2001).

[11] *Id.* at 298, 631 N.W.2d at 498.

against excessive levies are mandatory and that the county must strictly comply with them:

The notice requirements under § 77-1502 occur at a different point in time in the assessment process than the notice required by what is now § 77-1315. However, its object is largely the same, namely, notice. Given that appeals to TERC must be taken within 30 days after the adjournment of a board of equalization, § 77-1502 ensures that a taxpayer will be notified of the board's decision in order that the taxpayer may have time to prepare and file an appeal within the statutory 30-day period. Without this notice provision, the board could very well delay notification to the taxpayer, thereby preventing review of the board's decision. Likewise, if a violation of this provision were without consequence, the board could similarly engage in such delay and defeat the taxpayer's appeal, *effectively denying the taxpayer the process that is due under the statutes*. We conclude that just as notice by the county assessor under § 77-1315 is essential to the validity of the levy, so too is notice by the county clerk under § 77-1502.[12]

We held that because the county had violated this statutory duty, the valuation increase was void. *Falotico* emphasizes that under our case law, even if the taxpayer received notice of the increased assessment and an opportunity to be heard, an increased assessment is void if a taxpayer does not receive the statutory "process that is due" at every stage of an assessment proceeding.

I agree that in enacting § 77-1507.01, the Legislature intended to give a taxpayer the right to petition TERC when the taxpayer lost the right to protest an assessment to the county board due to lack of notice. But § 77-1507.01 implicitly contemplates that TERC will provide an equivalent evidentiary hearing by authorizing taxpayers to file a "petition" with

---

[12] *Id.* at 298-99, 631 N.W.2d at 498 (emphasis supplied).

TERC if lack of notice prevented them from timely filing a protest with a county board of equalization. I agree with the majority's conclusion that when a taxpayer files a petition for a protest hearing, TERC must act as factfinding body—not an appellate tribunal.

I also agree with the majority that because TERC is providing a substitute protest hearing, it erred in applying a clear and convincing standard of proof in reliance on what is now § 77-5016(9). The majority specifically reasons that because the hearing before TERC is a substitute protest hearing, it must be governed by the standard of proof that applies to a hearing before the county board of equalization. But applying the wrong standard of proof is not the only way in which Cain was denied the process that he would have received if the county had provided timely notice of his increased assessments.

As the majority opinion explains, under the statutes governing TERC's procedures,[13] if only two TERC commissioners hear a taxpayer's protest, the taxpayer must obtain a unanimous decision to prevail. But the majority opinion also acknowledges that the protest statutes do not contemplate a procedure in which a single adjudicator has veto power, as in this case. So Cain did not received the procedures that he would have received under the protest statutes.

I see no reason to distinguish the statutory adjudication requirement from the statutory standard of proof. If taxpayers are entitled to the benefit of one procedure, they are entitled to the benefit of the other. And our case law requiring strict compliance with the protest procedures would be meaningless if a county could simply avoid the procedures by delaying notice and depriving a taxpayer of a protest hearing before a county board. Because § 77-1507.01 must be construed as providing a substitute protest hearing, a decision on the merits is required under the same procedural protections. At

_____

[13] See Neb. Rev. Stat. § 77-5005 (Cum. Supp. 2014) and § 77-5016(13).

an original protest hearing, a finder of fact is not deciding whether to maintain the status quo. It is deciding whether to increase a property assessment. And a split vote by a county board of equalization is not a decision to take that action.

Because TERC failed to render a valid decision under the protest statutes, I conclude that we do not have a final order or jurisdiction to consider the merits of the appeal. The lack of a final order, however, does not preclude us from vacating the order and remanding the cause for a tie-breaking decision on the merits under the same standards that apply to a county board of equalization.[14] But I would hold that unless TERC provides a hearing equivalent to the procedure that Cain would have received before the county board had the Assessor complied with notice requirements, the increased assessment is void.

---

[14] See, *Conroy v. Keith Cty. Bd. of Equal.*, 288 Neb. 196, 846 N.W.2d 634 (2014), citing *In re Interest of Trey H.*, 281 Neb. 760, 798 N.W.2d 607 (2011); *Jacobitz v. Aurora Co-op*, 287 Neb. 97, 841 N.W.2d 377 (2013).